**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EVARISTUS MACKEY,** : | |
| : | |
| Plaintiff : | |
| : | CIVIL NO. 3:CV-11-0373 |
| v. : | |
| : | (Judge Caputo) |
| **BUREAU OF PRISONS,** *et al.*, : | |
| : | |
| Defendants : | |

**M E M O R A N D U M**

**I.   Introduction**

Before the Court is Defendants' Warden Bledsoe, Atty. Cunningham, and the Bureau of Prisons (BOP) motion to dismiss or in the alternative, for summary judgment.  (Doc. 13.)  The *pro se* Plaintiff, Evaristus Mackey, a federal inmate formerly housed at USP-Lewisburg, in Lewisburg, Pennsylvania,[1] filed this civil rights action concerning the confiscation and destruction of "some personal papers about the Uniform Commercial Code (UCC)".  (Doc. 1 at p. 2.)[2]

---

[1] Mr. Mackey is currently housed at USP-Big Sandy, in Inez, Kentucky.

[2] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the Electronic Case Filing system (ECF) rather than the page number of the original document.

In his Complaint, Mr. Mackey asserts that on May 31, 2011, after sending these papers to the institution's librarian for copying, he received a letter from Attorney Cunningham advising him that the paperwork was confiscated as contraband because it contained UCC lien documents which inmates are prohibited per BOP policy from possessing.  (*Id.*)  Mr. Mackey contends that Defendants violated his First Amendment and Due Process rights when confiscating these materials pursuant to a BOP Memorandum which is "void-for-vagueness".  (*Id*. at p. 5.)

Although Defendants' summary judgment motion has presented several alternative arguments for the dismissal of this action, because the Court finds that Mr. Mackey did not exhaust his available administrative remedies as to the claims presented in this action, the Court will grant summary judgment on this basis and dispense with addressing the secondary arguments.

**II.     Standard of Review**

Pursuant to Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  An issue

is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. *Liberty Lobby*, 477 U.S. at 251-52, 106 S.Ct. at 2511-12. In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at 2514. "The non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific

facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 - 232 (3d Cir. 2001). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Evidence that would be inadmissable at trial may not be considered at summary judgment. *See Bristol v. Settle*, 457 F. App'x 202, 204 (3d Cir. 2012). Allegations made without evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). "Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002). Hearsay testimony contained in affidavits or statements that would be inadmissible at trial may not be included in an affidavit to oppose summary judgment. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Comp.*, 998 F.2d 1224, 1234 n. 9 (3d Cir. 1993). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## II.	Statement of Material Facts

The summary judgment record is as follows.[3]  On January 29, 2009, Warden Bledsoe posted a notice to the inmate population regarding the BOP's implementation of provisions of the Court Security Improvement Act of 2007.  (Doc. 17, Defs.' Statement of Material Facts (DSMF) ¶22; *see also* Doc. 1, Compl. at p. 11.)  The notice advised inmates that they were prohibited from possessing or obtaining Uniform Commercial Code (UCC) statements or similar forms, as well as unauthorized personal information of staff.  DSMF ¶23.  Inmates were informed that these materials would be confiscated and considered contraband.  *Id*. ¶24.  The notice also informed inmates that they could use the BOP's administrative remedy process to challenge the rejection of such material.  *Id*. ¶25.  Inmates were told that 18 U.S.C. § 1521 established a criminal offense for filing, attempting to file or conspiring to file a false lien or encumbrance against the real or personal property of a Federal Judge or Federal law enforcement officer.  *Id*. ¶26.

In April 2010, Attorney Cunningham was contacted by an Assistant United States Attorney for the Eastern District of Louisiana who informed her that Mr. Mackey had filed harassing liens against his federal sentencing judge and other law enforcement officials involved with his criminal case.  *Id*. ¶28. On April 26, 2010, the Honorable Judge Carl J. Barbier of the United States District Court for the Eastern

---

[3] All material facts set forth in defendants' Statement of Material Facts (Doc. 17) are deemed admitted as Mr. Mackey failed to file a counter-statement as required by M.D. Local Rule 56.1.  *See Smith v. Addy*, 343 F. App'x 806, 808 (3d Cir. 2009) (District Court entitled to deem Defendants' statement of facts as admitted due to Plaintiff's failure to file a counter-statement of material facts).

District of Louisiana found Mr. Mackey in civil contempt, and sanctioned him to a $1,500.00 fine for violating a February 19, 2009, Order which precluded him from continued involvement in harassing lien-filing activity. *Id*. ¶29.

Shortly thereafter, USP-Lewisburg Education Department staff (who are responsible for copying materials for inmates) contacted Attorney Cunningham and asked her to review a packet of documents Mr. Mackey had submitted for copying which appeared to contain lien filing information. *Id*. ¶30. It was the opinion of Attorney Cunningham that the documents contained forms and instructional material on how to file the types of liens which Mr. Mackey previously filed against court and law enforcement officials which the Court Security Improvement Act was designed to prevent. *Id*. ¶31. "The documents were confiscated on 5-31-10." Doc. 1, Compl. at p. 2 and p. 18. On June 6, 2010, Attorney Cunningham then advised Mr. Mackey that the material he forwarded to the Education Department was confiscated as contraband because it contained UCC lien documents which inmates are prohibited from possessing. DSMF¶32; *see also* Doc. 1 at pp. 9-10. Because the lien-related material could be mailed/filed by any sender, Attorney Cunningham informed Mr. Mackey that he would not have the opportunity to mail the material home. DSMF ¶33.

Federal inmates may challenge any aspect of their confinement by using the BOP's Administrative Remedy procedure. *Id*. ¶1, citing 28 C.F.R. § 542.10. The first step is to present the issue to the staff for an informal resolution attempt. *Id.* ¶5, citing See 28 C.F.R. § 542.13(a). If that does not resolve the issue, the inmate must

submit a formal request for administrative relief to the Warden within 20 calendar days following the date on which the basis for the Request occurred. *Id.* ¶5, citing 28 C.F.R. § 542.14(a). An inmate who is not satisfied with the Warden's response may submit an appeal to the Regional Director. *Id.* ¶7, citing 28 C.F.R. § 542.15(a). If dissatisfied with the response from the Regional Director, the inmate may submit an appeal to the BOP's Central Office. *Id.* ¶8, citing 28 C.F.R. § 542.15(a). No administrative appeal is considered to have been fully and finally exhausted until it has been considered by the BOP's Central Office. *Id.* ¶9.

On June 28, 2010, Mr. Mackey filed Administrative Remedy No. 596141-F1 at the institution level challenging the confiscation of his property. *Id*. ¶16; Doc. 1 at pp. 12-14.[4] On the same date the remedy request was denied as untimely as it was not received within 20 days of the event complained of, *Id.* at p. 12, which Mr. Mackey defines as May 31, 2010, in his Complaint. *See Id*. at p. 2 ("[t]he documents were confiscated ... on 5-31-10") and p. 18 ("The date complained about (event on 5-31-10)"). On July 15, 2010, Mr. Mackey filed Administrative Remedy No. 596141-R1 to the Northeast Regional Office. *Id*. at pp. 15-16. In his appeal he argues that "[t]he date received from Inmate on the BP-8 is 6-9-10 & the date of the BP-9 is 6-22-10" and thus his administrative remedy is not untimely. *Id*. at p. 16. On July 16, 2010, the Northeast Region rejected the request noting "concur with rejection for being untimely." *Id*. at p. 15. On August 3, 2010, Mr. Mackey filed

---

[4] A Request or Appeal is deemed filed on the date that the Administrative Remedy Clerk stamps the form with the date received. *See* BOP Program Statement 1330.13, Administrative Remedy Program, available at http://www.bop.gov.

Administrative Remedy No. 596141-A1 to the Central Office. *Id*. at p. 18.  Again he argues that his original Administrative Remedy was timely because the event complained of occurred on May 31, 2010 and his BP-9 (informal resolution request) and BP-10 (request to Warden) was "within 20 day timeframe." *Id*.  Central Office rejected the filing as untimely, noting "concur with the rejection that BP-9 is untimely." *Id*. at p. 17.

## IV.   Discussion

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies.  *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002).  The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action. *Oriakhi v. United States*, 165 F. App'x 991, 993  (3d Cir. 2006)(per curiam)(nonprecedential) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002)).  The exhaustion requirement is mandatory and cannot be excused for "'sensitive' subject matter or 'fear of retaliation . . .'" *Pena-Ruiz v.*

*Solorzano*, 281 F. App'x 110, 113 (3d Cir. 2008)(per curiam) (nonprecedential).

Here, the undisputed record reveals that Mr. Mackey did not timely exhaust his administrative remedies concerning the confiscation of his UCC materials in accordance with the BOP's Administrative Remedy Program. Using largely the dates Mr. Mackey provided in his Complaint, it is clear that he was advised that his property was confiscated on May 31, 2010. *See* Doc. 1 at pp. 2, 9, and 18. He informally presented his grievance regarding the confiscation of his property and "[t]he date received from Inmate on the BP-8 [was] 6-9-10." *Id*. at p. 16. Pursuant to the BOP's Administrative Reedy Program, "The deadline for completion of information resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date *on which the basis for the Request occurred.*" 28 C.F.R. § 542.14(a)(emphasis added). This provision is clear that the timeliness of the initial Administrative Remedy is based upon the date of the event complained of, and not as Mr. Mackey would suggest, the date of the filing or completion of the inmate's informal resolution efforts. Accordingly, Mr. Mackey would have had to submit his BP-9 to the Warden within 20 calendar days of May 31, 2010, or June 20, 2010. By his own admission, he did not pen his BP-9 until June 22, 2010, and it was not received by the Administrative Remedy Coordinator until June 28, 2010. *See* Doc. 1 at pp. 12-13. Although Mr. Mackey continued to appeal the rejection of his Administrative Remedy as untimely to final review, he did not "properly exhaust" his administrative remedies as he did not comply with the BOP's Administrative Remedy Program timeliness

requirements.

      The record before the Court as to Mr. Mackey's exhaustion efforts regarding the issues raised in this action is clear and uncontested. His Complaint confirms the Defendants' presentation of the facts that he failed to properly complete the BOP's administrative remedy process with regard to issues raised in the Complaint. Plaintiff failed to properly exhaust his administrative remedies before filing this action, and thus the Defendants are entitled to summary judgment.

      An appropriate Order follows.


                                                                                      /s/ A. Richard Caputo
                                                                                      **A. RICHARD CAPUTO**
                                                                                       **United States District Judge**

**Date: September  4 , 2012**